CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 2 2008

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LATIF RASHE'D, </br>     Plaintiff, | Civil Action No. 7:08-cv-00333 |
| v. | **MEMORANDUM OPINION** |
| JEFFERY N. DILLMAN, WARDEN, </br> et. al., </br>     Defendants. | By: Hon. James C. Turk </br> Senior United States District Judge |

Plaintiff Latif Rashe'd, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Rashe'd alleges that the defendants, officials at Green Rock Correctional Center ("Green Rock"), violated his constitutional rights when they "contemptuously denied [him] religious materials, including The Holy Quran, an Islamic holy book, without cause or explanation" and that they "unjustly" dismissed him from his prison job. Rashe'd seeks monetary damages for these alleged violations. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

I

From the plaintiff's submissions, the court concludes that Rashe'd bases his religious materials claim on the following sequence of events. On November 1, 2007, Rashe'd submitted to the personal property officer a request to order the following items: "Arabic Reading One (Book and 5 CDs); The Meaning of the Quran - 6 vols.; and Al-Muhit - Oxford Study Dictionary." The staff

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

response on the request, signed by C. L. Stallard, states: "Approved subject to Review. I sent out your new order." Rashe'd interpreted this response as permission to order the materials. However, when the materials arrived at the prison, officers returned them to the publisher without notice to Rashe'd. He felt that his inquiries about the matter were "met with disrespect and abuse of authority."

In April 2008, he made a second request to purchase the same items. The request form itself states the following warning to the inmate:

> All items and publications ordered will be inspected for compliance with Operating Procedures 802.1 and DOP 852 (Operating Procedure 803.2), before I can receive them. I understand that, if they are found not to meet the criteria set forth in these procedures, I will not be permitted to receive them.

Pl'ff Exh. J. The request to order materials was checked "approved" on April 15, 2008, by the Facility Unit Head/Designee. On April 17, Rashe'd wrote a request form to the assistant warden, asking why his religious materials had been returned to the publisher the first time without notice to Rashe'd. The response to his request states:

> If you followed proper procedure for ordering publications as outlined in OP 803.2 you would have received notification to have it reviewed by Publication Review Committee. If the property was ordered in keeping with OP 802.1, you would have received notice.

Pl'ff Exh. H. When Rashe'd asked the chaplain for help, the assistant warden relied that he stood by his previous response.

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A prison regulation that affects inmates' ability to exercise their religious beliefs

2

withstands constitutional scrutiny if the regulation is reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). "[O]nly intentional conduct is actionable under the Free Exercise Clause," Lovelace v. Lee, 472 F.3d 174, 201 (2006) (citing Daniels v. Williams, 474 U.S. 327, 329-31 (1986)); therefore, negligent acts that interfere with an inmate's ability to exercise his beliefs do not state any First Amendment claim actionable under § 1983. Judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974).

Under these principles, the court cannot find that Rashe'd alleges facts stating any deprivation of constitutional rights. Prison officials may certainly require him to comply with publications approval procedures before he is allowed to possess books or CDs that he has ordered. Such procedures are rationally related to, and further, the prison's ability to ensure that no inmate possesses publications or items in his cell that would present any sort of threat to the security and order of the institution. Rashe'd believes that he complied with the approval procedure for publications, but the assistant warden disagrees. He clearly states that Rashe'd must receive the approval of the Publications Review Committee ("PRC") before receiving the books and CDs he has requested. Rashe'd does not allege facts or offer documentation indicating that the PRC reviewed or approved either his first or second request. If he thus has failed to comply with prison procedures, he has no constitutional claim, since the procedural steps are related to the prison's interests in order and security and so meet the O'Lone standard. Even if Rashe'd could now demonstrate that he had

3

sought and received the PRC's review and approval for either of his requests, the assistant warden clearly was not aware of this fact. He denied approval for the publications request based on his belief, whether justified or mistaken, that Rashe'd had not complied with the PRC review requirement. If he was wrong, his actions represent nothing more than negligence, which is not actionable under the First Amendment. Rashe'd is advised to comply fully with PRC review and any other procedural requirements in pursuing his request for religious materials. However, his § 1983 claims concerning denial of religious materials in November 2007 and April 2008 must be dismissed, pursuant to § 1915A(b)(1), for failure to state a claim.

II

Rather than providing the court with a comprehensive narrative of events,, Rashe'd relies on copies of documentation in support of his claim of wrongful dismissal from his prison job. Rashe'd had a job working as a tutor. A "Weekly Exception Report" for the week ending April 4, 2008, indicates that on March 26, Rashe'd left work early to go to the commissary and never returned; on March 27, he was absent and sent word that he was sick; on March 28, he was absent, went to medical after breakfast, and never came to work; and on April 1-3, he was absent and sent no word. Rashe'd provides evidence that on April 2, 2008, he told Kevin Wilson to tell Mr. Sands that he [Rashe'd] was sick. On April 4, Mr. Sands, however, requested that Rashe'd be terminated from his tutoring job, based on his work performance (or lack thereof) during the previous week. The Termination Form also states that Rashe'd refused to come to the education department to sign a form. Rashe'd said he was never notified of any form he needed to sign, so should not be penalized for "refusing" to sign it. Rashe'd complains that the defendants dismissed him from his job without allowing him to present witnesses or other evidence to rebut the statements on the termination

4

request that he had missed work on several occasions without offering a reason.

Inmates also have no constitutional right to job opportunities while incarcerated, See, e.g., Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980). Moreover, they do not have a constitutionally protected liberty or property interest in keeping a particular prison job, if they are fortunate enough to obtain one. See Sandin v. Conner, 515 U.S. 472, 486-87 (1995) (liberty interest requires "atypical, significant deprivation" or deprivation that "will inevitably affect duration of sentence"). Since inmates have no right to a prison job, prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles. Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir.1995).

Under these principles, Rashe'd fails to allege facts stating any constitutional claim. He had no constitutional right to his tutoring job. He also no federal due process protections against losing it, based on his supervisor's belief that he had not provided proper notice of his absences. Even assuming that the defendants did not comply with prison regulations concerning dismissal of an inmate from his job, their failure to comply with such procedural requirements under state law does not state a claim that Rashe'd was deprived of any federal due process right. Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990). As Rashe'd does not state any claim actionable under § 1983, the court will dismiss his action, pursuant to § 1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of May, 2008.

                                        /s/ James C. Turk
                                        Senior United States District Judge